UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

MEAD DELLANEGRA VEST,             )
                                  )
       Plaintiff,                 )
                                  )
v.                                )   No.   1:17-cv-196
                                  )   Judge Phillips
RESOLUTE FOREST PRODUCTS          )
US, INC.,                         )
                                  )
       Defendant.                 )

# MEMORANDUM OPINION

Plaintiff Mead Dellanegra Vest claims that defendant Resolute Forest Products US, Inc. ("Resolute") breached its fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* [Doc. 1]. Specifically, Ms. Vest claims that Resolute failed to provide her late husband with a notice of his conversion rights under a group life insurance policy when his employment ended.

Resolute has filed a motion to dismiss the instant case [Doc. 7] with supporting briefs [Docs. 8, 18], and plaintiff has responded in opposition [Doc. 14]. For the reasons set forth herein, the defendant's motion [Doc. 7] will be **GRANTED**.

**I.      Relevant Facts**[1]

Plaintiff is the widow of Arthur Vest, and the beneficiary of his life insurance plan underlying this action [Doc. 1 at ¶ 3]. From October 1976 through September 2015, Arthur Vest worked for defendant in its Calhoun, Tennessee location [*Id.* at ¶ 6]. In his final job title as occupational health and safety manager, Mr. Vest earned approximately $100,000 per year [*Id.* at ¶ 7].

Resolute provided group life insurance benefits for its employees through the Resolute FP US Inc. Life Insurance Program (the "Plan")[2] and Mr. Vest was a participant in this Plan [*Id.* at ¶ 8—10]. The Plan provided basic coverage in an amount equal to the participant's salary, or $100,000 for Mr. Vest, paid for by Resolute [*Id.* at ¶ 11]. Further, participants could purchase optional coverage in the amount of 1, 2, 3, 4, or 5 times the participant's salary [*Id.* at ¶ 12]. Mr. Vest purchased optional coverage in the amount of 3 times his salary [*Id.* at ¶ 13]. The Plan provided that in the event some or all of a participant's optional coverage ends, such as when an employee begins receiving long-term disability benefits, he may either convert the amount that ends to an individual policy or port the amount that ends to another group policy [*Id.* at ¶ 14—15]. Either converting or porting requires an application to the insurance company within 31 days and payment of applicable premiums [*Id.*]. The Plan's summary plan description ("SPD") states, "[i]f

---

[1] For the purposes of a motion to dismiss, the Court takes the factual allegations in the complaint [Doc. 1-1] as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").

[2] The Plan is an employee welfare benefit plan governed by ERISA. 29 U.S.C. § 1002(1).

all or part of your coverage ends, you may convert the amount that ends to an individual Life Insurance policy" [*Id*. at ¶¶ 25, 30; Doc. 8-1 at p. 21].[3]

Around September 23, 2015, Mr. Vest ceased working due to a disability caused by complications from diabetes [Doc. 1 at ¶ 16]. Mr. Vest applied for, and was awarded short-term and then long-term disability benefits [*Id*. at ¶ 17]. By letter dated April 27, 2016, Resolute's long-term disability carrier informed Mr. Vest that his long-term disability claim was approved effective March 23, 2016 [*Id*. at ¶ 18]. At this time, Resolute switched Mr. Vest's life insurance coverage to the basic coverage amount of $100,000, and ended his optional life insurance coverage [*Id*. at ¶ 19]. Resolute provided Mr. Vest with a summary of his benefits as of May 23, 2016, which showed that he was currently covered by the basic life insurance and his optional life insurance coverage expired on May 18, 2016 [*Id*. at ¶ 20]. It is undisputed that Resolute did not provide Mr. Vest with any information at this time concerning his right to port or convert the optional coverage that had ended [*Id*. at ¶ 21].

After Mr. Vest died on October 11, 2016, Resolute paid plaintiff $100,000 for Mr. Vest's basic life insurance coverage [*Id*. at ¶¶ 22—23]. By an October 19, 2016 email to plaintiff, Resolute confirmed that the optional coverage stopped when Mr. Vest began long term disability and he did not port or convert within 31 days [*Id*. at ¶ 24—25].

---

[3]The SPD is attached as an exhibit to defendant's memorandum [Doc. 8-1]. Because the SPD is central to plaintiff's claims, the Court may consider it in reviewing a motion to dismiss without converting the motion to one for summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court also notes that the plaintiff has not objected to the consideration of this document.

Plaintiff has sued for equitable relief under ERISA § 502(a)(3), 29 U.S.C.§ 1132(a)(3), alleging that the SPD was insufficient to advise participants of their right to convert or port life insurance coverage and that Resolute's failure to provide an additional notice of conversion rights was a breach of its fiduciary duties [*Id*. at ¶¶ 32—34].

## II. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

**III.    Analysis**

ERISA obligates a fiduciary to discharge its duties with respect to a plan "solely in the interests of the participants and beneficiaries" with the care, skill, prudence, and diligence a prudent person would use and in accordance with documents and instruments governing the plan. 29 U.S.C. § 1104(a)(1). ERISA permits plan participants and beneficiaries to sue for equitable relief for a breach of fiduciary duty, including where plan fiduciaries make materially misleading misrepresentations regarding the extent or availability of benefits under the plan. 29 U.S.C. § 1132(a)(3)(B); *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002), *cert. denied*, 538 U.S. 1033 (2003); *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999); *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992), *cert. denied*, 508 U.S. 940 (1993). "[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision in pursuing disability benefits to which she may be entitled." *Krohn,* 173 F.3d at 547 (citing *In Re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.,* 57 F.3d 1255, 1264 (3d Cir. 1995), *cert. denied*, 517 U.S. 1103 (1996)).

As plaintiff points out, Resolute is named in the SPD as the Plan Administrator [Doc. 8-1 at p. 41] and a fiduciary is one who "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(iii). Resolute does not dispute that it is an ERISA fiduciary under the Plan, but rather argues that the failure to send Mr. Vest a notice of conversion rights was a ministerial act and not a fiduciary act [Doc. 8 at pp. 4—6]. Moreover, Resolute cites well-established authority that ERISA does not require it to provide a notice of conversion rights apart from that contained in the SPD [*Id*. at pp. 6—9].

Plaintiff responds that Resolute's knowledge of Mr. Vest's serious health condition places this case outside the general rule cited by Resolute. Because Resolute knew of Mr. Vest's serious health condition, Resolute knew or should have known that conversion rights would be particularly valuable to Mr. Vest. Thus, plaintiff argues that this situation falls in line with *Krohn*, such that Resolute had "not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful" [Doc. 14 at pp. 6—10 (citing 173 F.3d at 548)]. In reply, Resolute contends that the authorities relied upon by plaintiff are distinguishable and that this case involves no special circumstances requiring it to provide Mr. Vest with a notice of conversion rights [Doc. 18].

Thus, the question presented is whether Resolute was "acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich,* 530 U.S. 211, 226 (2000); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 552 (6th Cir. 2012), *cert. denied*, 568 U.S. 1157 (2013). Or, more specifically, has plaintiff alleged

6

facts that fit within the general rule as argued by Resolute or within the exception to the rule as argued by plaintiff?

The general rule relied on by Resolute is set forth in *Walker v. Fed. Exp. Corp.*, 492 F. App'x 559 (6th Cir. 2012), *cert. denied*, 568 U.S. 1114 (2013). In *Walker*, the Sixth Circuit faced an analogous situation where the participant could not return to work due to health issues and later died. The beneficiary claimed that the participant never received notice of his right to convert a group life insurance benefit to an individual policy. The court concluded that these facts did not present a breach of fiduciary duty claim. Simply stated, "ERISA does not contain any provision that requires a plan administrator to provide notice to plan participants other than a summary plan description and information of the benefits plan as discussed under 29 U.S.C. §§ 1021(a)(1) and 1022." *Id.* at 566; *Prouty v. Hartford Life & Acc. Ins. Co.*, 997 F. Supp. 2d 85, 91 (D. Mass. 2014) ("[ERISA] simply does not require that the SPD even include notification to participants and beneficiaries of any conversion rights."); *see Tuhey v. Illinois Tool Works, Inc.*, No. 17 C 3313, 2017 WL 3278941, at *7 (N.D. Ill. Aug. 2, 2017) ("[c]ourts adjudicating apposite claims … consistently find no fiduciary duty to provide specific information about conversion rights"); *Lucas v. Steel King Indus., Inc.*, 32 F. Supp. 3d 994, 1004 (W.D. Wis. 2014) (generally "an employee has no right to *individualized* notice under ERISA – that is, to notice of their individual rights and options based on their particular circumstances").

The exception to the general rule is established by the Sixth Circuit's decision in *Krohn*, 173 F.3d 542. In *Krohn*, the plaintiff completed an application for disability benefits following an automobile accident, but then decided to collect lost wage benefits

7

from her car insurance policy instead. Therefore, the plan administrator never processed plaintiff's application for disability benefits. 173 F.3d at 545—46. When the car insurance benefits expired three years later, plaintiff submitted her application for long-term disability benefits, but her claim was denied as untimely. *Id*. at 546. The court noted that the plaintiff's husband had requested information about benefits at a time when it was unknown when or if his wife would return to work. *Id*. at 549. Further, the plan administrator had enough information to conclude that the plaintiff would be eligible for long-term disability benefits for some period and should have advised her that the failure to timely apply for those benefits could render her ineligible. *Id*. at 549—50. Plaintiff's decision to pursue benefits through her car insurance proved shortsighted because those benefits expired after three years, whereas she could have continued long-term disability benefits up to age 65, or for 23 years from the date of her accident. *Id*. at 550.

Because the administrator was aware of plaintiff's circumstances, the Sixth Circuit concluded that it had a fiduciary duty "to convey complete and accurate information material to the beneficiary's circumstance, *even if that requires conveying information about which the beneficiary did not specifically inquire*." *Id*. at 547 (emphasis added). Analogizing to the duties of a trustee, the court found that the fiduciary had a "negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Id*. at 548 (quoting *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3rd Cir. 1993)). *See Palen v. Kmart Corp.*, 215 F.3d 1327, 2000 WL 658115, at*3 (6th Cir. May 9, 2000) (when beneficiary communicated participant's desire to continue "all of his benefits," fiduciary "became obligated to disclose

all material information, including information … not specifically requested"). "[K]nowledgeable about Krohn's situation and armed with periodic updates about her disability status, Huron Memorial owed Krohn a duty to inform her – carefully, completely, and accurately – of the long-term disability benefits to which she was entitled through her employer, so that she could weigh her options and make informed decisions." *Id*. at 551.

The *Krohn* decision relied on the reasoning of *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747 (D.C. Cir. 1990). The plaintiff in *Eddy* was informed that his group health insurance was being cancelled. *Id*. at 748. When the plaintiff called the insurance company and asked about conversion rights under the policy, he was incorrectly informed that he did not have the right to convert his group coverage to an individual policy. *Id*. at 749. Noting an ERISA fiduciary's duty to disclose complete and correct information to a beneficiary, the court concluded that this duty included a duty "to advise him of circumstances that threaten interests relevant to the relationship." *Id*. at 750. Because the plaintiff had inquired about his coverage, the insurance company had a duty "to do more than simply *not misinform*, … [but] an affirmative obligation to *inform* – to provide complete and correct material information on [plaintiff's] status and options." *Id*. at 751. Pertinent to the instant case, the court concluded that this duty to provide complete and correct material information arose once the fiduciary was aware of plaintiff's circumstances. *Id*. at 752. *See Erwood v. Life Ins. Co. of N. Am.*, No. 14-1284, 2017 WL 1383922, at *9 (W.D. Pa. Apr. 13, 2017) (breach of fiduciary duty where insurance company failed to notify plaintiff of conversion rights after plaintiff specifically inquired about maintaining coverage); *Fed. Ins. Co. v. Am. Home. Assur. Co.*, 102 F. Supp. 3d 1354,

9

1359 (N.D. Ga. 2015) ("[t]he company … was aware of specific facts related to [participant's] circumstances which made the issue of conversion rights significant to him and, thus, invoked the company's fiduciary duties."); *Skiles v. E.I. Dupont de Nemours & Co.*, No. 1:03-CV-239, 2005 WL 991661, at *10 (E.D. Tenn. Jan. 25, 2005) (Collier, J.) (plaintiff's inquiries in the wake of her terminal diagnosis should have been sufficient to put defendant on notice of plaintiff's eligibility for accelerated benefits and the failure to provide that information was materially misleading).

Thus, the distinction between these two lines of cases appears to be when the plaintiff shows unique facts or circumstances that require the fiduciary to do more than is generally required by ERISA. *See Tuhey*, 2017 WL 3278941 at *7 (cases which require fiduciaries to provide notice of conversion rights "involve ERISA fiduciaries who either failed to disclose material information which they knew the beneficiary did not have or affirmatively misinformed the plan participant or beneficiary concerning plan benefits (and did not subsequently provide correct information)") (quoting *Neuma, Inc. v. E.I. DuPont de Nemours & Co.*, 133 F. Supp. 2d 1082, 1090 (N.D. Ill. 2001)). For example, the duty may be found when: (1) the participant asks for information, *Palen*, 2000 WL 658115, at *4; *Eddy*, 919 F.2d at 751; (2) the fiduciary provides incomplete or incorrect information, *Krohn*, 173 F.3d at 550—51; (3) the fiduciary is aware of information about the participant "which made the issue of conversion rights significant," *Fed. Ins. Co.*, 102 F. Supp. 3d at 1359; (4) a change to the benefit plan requires notice to affected employees, *Lucas*, 32 F. Supp. 3d at 1006; or (5) a plan provision requires the fiduciary to provide the information, *Erwood*, 2017 WL 1383922, at *6. Where no special or unique circumstances are present,

the fiduciary has no duty to provide information on conversion rights. *See Fed. Ins. Co.*, 102 F. Supp. 3d at 1359, n.1 ("Had the company not been aware of [participant's] terminal illness and had not itself recognized the need for specialized planning, … the court might reach a different conclusion about the scope of the employer's fiduciary duties").

Plaintiff argues that Resolute knew Mr. Vest wanted the optional life insurance coverage based on his prior enrollment and that Mr. Vest had a serious health condition based on his application for and receipt of disability benefits [Doc. 14 at p. 9]. Thus, like *Krohn*, Resolute should have known that conversion rights would be particularly important to Mr. Vest. Plaintiff also argues that Resolute's notification to Mr. Vest that his optional coverage expired on May 18, 2016 was an incomplete communication because it did not provide information on how to maintain his previous level of coverage [*Id.*].

Because the issue is presented on a motion to dismiss, the Court must consider whether the allegations in the complaint are sufficient to place this case in the category of *Krohn* and its progeny. In the instant case, there is no allegation that Mr. Vest or plaintiff requested information regarding his benefits until after his death or that they communicated an interest in maintaining certain benefits prior to his death. Plaintiff does not allege that Resolute knew of specific facts related to his health condition; that is inferred through plaintiff's allegation that Mr. Vest stopped working due to complications from diabetes and he applied for and was awarded disability benefits [Doc. 1 at ¶¶ 16—17]. There is no allegation that Resolute knew his condition was "terminal", *cf. Krase v. Life Ins. of N. Am.*, No. 11 C 7659, 2012 WL 4483506, at *1 (N.D. Ill. Sept. 27, 2012), or that he would never return to work. There is no allegation that the Plan required Resolute to provide

11

information regarding conversion rights beyond that contained in the SPD. *Cf. Erwood*, 2017 WL 1383922, at *6. Plaintiff does not allege that Resolute conveyed incorrect information when it provided Mr. Vest with a summary of his benefits after his disability claim was approved. Instead, plaintiff's claim rests on the allegation that because Resolute approved of Mr. Vest's disability claim, it should have known that conversion rights would be important to him and should have provided him with that information.

After carefully considering the instant complaint and the authorities cited by both parties, the Court concludes that plaintiff has not alleged sufficient facts to place this case in the category with *Krohn*. Were the Court to conclude otherwise, it would be requiring ERISA administrators to provide such information any time a participant's benefits terminated or were reduced. This could include employees who are fired, retire, or simply change from full-time to part-time status. While it would be beneficial for participants to receive such information, Congress has not enacted such a broad requirement on plan administrators and it is not for this Court to do so. *See Cummings v. Briggs & Stratton Ret. Plan*, 797 F.2d 383, 387 (7th Cir.), *cert. denied*, 479 U.S. 1008 (1986) ("[t]he opposite interpretation would impose an almost impossible burden on ERISA plan administrators to seek out and maintain sufficient current information about the health and individual needs of each plan member to enable the administrators to render personal service"); *Howard v. Gleason Corp.*, 716 F. Supp. 740, 744 (W.D.N.Y. 1989) ("I agree with plaintiff that it would have been a good idea for an employer to include a printed notice of an employee's conversion option with his or her final paycheck. Unfortunately, that responsibility is not

mandated by the ERISA."). Accordingly, the Court finds that plaintiff has not alleged a plausible claim for breach of fiduciary duty.

**IV.     Conclusion**

For the reasons set forth herein, the defendant's motion to dismiss [Doc. 7] will be **GRANTED** and this case will be **DISMISSED**.  An appropriate order will be entered.

                                       s/ Thomas W. Phillips
                                       SENIOR UNITED STATES DISTRICT JUDGE